1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT
8            EASTERN DISTRICT OF CALIFORNIA
9
10

GUILLERMO GARCIA,              ) 1:09-cv—1648-AWI-SKO-HC
                              )
          Petitioner,         ) ORDER DIRECTING THE CLERK TO
                              ) SUBSTITUTE WARDEN FRANK X. CHAVEZ
                              ) AS RESPONDENT PURSUANT TO
     v.                       ) FED. R. CIV. P. 25(d)
                              )
FRANK X. CHAVEZ,              ) FINDINGS AND RECOMMENDATION TO
Warden of Sierra Conservation ) GRANT RESPONDENT'S MOTION TO
Center,                       ) DISMISS THE PETITION
                              ) (Docs. 12, 1)
          Respondent.         )
                              ) OBJECTIONS DUE WITHIN 30 DAYS
_____ )

        Plaintiff is a state prisoner proceeding pro se and in forma

pauperis with a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  The matter has been referred to the Magistrate

Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and

304.  Pending before the Court is Respondent's motion to dismiss,

filed and served on March 4, 2010.  On May 27, 2010, Petitioner

filed a document entitled as a traverse (doc. 19) that by order

filed on June 3, 2010, was deemed by the Court to be an

opposition to the motion to dismiss.  Respondent filed a reply on

June 8, 2010.  The matter has been submitted to the Court without

                              1

oral argument pursuant to Local Rule 230(l).

I.   <u>Order Directing Substitution of Warden Frank X. Chavez as Respondent</u>

This Court has a duty to raise the issue of jurisdiction sua sponte. <u>Smith v. Idaho</u>, 392 F.3d 350, 354 (9th Cir. 2004).

Title 28 U.S.C. § 2242 provides that a petition for writ of habeas corpus shall allege the name of the person who has custody over the applicant. Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules) provides that if the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.

The respondent must have the power or authority to provide the relief to which a petitioner is entitled. <u>Smith v. Idaho</u>, 392 F.3d 350, 355 n. 3 (9th Cir. 2004). A failure to name the proper respondent destroys personal jurisdiction. <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994). However, objections to a lack of personal jurisdiction, including the requirement of naming the technically correct custodian under § 2242 and the Habeas Rules, may be forfeited or waived on behalf of the immediate custodian by the relevant government entity, such as the state in a § 2254 proceeding. <u>Smith v. Idaho</u>, 392 F.3d 350, 355-56, 356 n. 4 (9th Cir. 2004) (where the state conceded it had waived lack of jurisdiction over a petitioner's immediate custodian and submitted itself in his stead to the jurisdiction of the federal courts).

Further, the Court has the discretion to avoid delay and waste of the resources of the Court and the parties by

recognizing a waiver instead of requiring formal amendment of the petition by the Petitioner.  Id. at 356 n. 6.

Here, Petitioner initially named the California Department of Corrections and Rehabilitation and various prison staff members as Respondents.  (Pet. 1.)  However, in the motion to dismiss, Respondent identifies the proper respondent as Frank X. Chavez, who acts as warden at Sierra Conservation Center (SCC), where Petitioner is housed.  (Mot. 1 n. 1.)  Further, it is stated that the answer and motion to dismiss are filed "on behalf of Warden Chavez, who requests that the Court substitute him as the sole respondent."  (Mot. 1 n. 1.)

Respondent requests that the substitution occur pursuant to Fed. R. Civ. P. 25(d), which provides that a court may at any time order substitution of a public officer who is a party in an official capacity whose predecessor dies, resigns, or otherwise ceases to hold office.

The Court concludes Warden Frank X. Chavez, Warden of SCC, is an appropriate respondent in this action, and that pursuant to Fed. R. Civ. P. 25(d), he should be substituted as Respondent.

Accordingly, it is ORDERED that Frank X. Chavez, Warden of Sierra Conservation Center, be substituted in place of the California Department of Corrections as Respondent.

II.   Motion to Dismiss after Expansion of the Record

It is by way of a motion to dismiss the petition that Respondent argues that Petitioner has failed to state a case or controversy cognizable pursuant to 28 U.S.C. § 2254.  Respondent argues that Petitioner has failed to establish a basis for habeas relief because Petitioner's allegations do not concern the fact

3

1  or duration of his confinement.

2      The filing of a motion to dismiss instead of an answer was

3  authorized by the Court's order of January 4, 2010, which

4  referred to the possibility of Respondent's filing a motion to

5  dismiss and set forth a briefing schedule if such a motion were

6  filed.  (Order, doc. 7, 2.)  Although the Supreme Court has

7  characterized as erroneous the view that a motion pursuant to

8  Fed. R. Civ. P. 12(b)(6) is appropriate in a habeas corpus

9  proceeding, Browder v. Director, Ill. Dept. of Corrections, 434

10 U.S. 257, 269 n. 14 (1978), it is established in this circuit

11 that the filing of a motion to dismiss is expressly authorized by

12 Habeas Rule 4.  Habeas Rule 4 Advisory Committee Notes, 1976

13 Adoption and 2004 Amendments; Gutierrez v. Griggs, 695 F.2d 1195,

14 1198 (9th Cir. 1983).

15     A federal court may only grant a state prisoner's petition

16 for writ of habeas corpus if the petitioner can show that "he is

17 in custody in violation of the Constitution or laws or treaties

18 of the United States."  28 U.S.C. § 2254(a).  A habeas corpus

19 petition is the correct method for a prisoner to challenge the

20 legality or duration of his confinement.  Badea v. Cox, 931 F.2d

21 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriguez, 411 U.S.

22 475, 485 (1973)); Advisory Committee Notes to Habeas Rule 1, 1976

23 Adoption.

24     Habeas Rule 7 permits the Court to direct the parties to

25 expand the record by submitting additional materials relating to

26 the petition and to authenticate such materials, which may

27 include letters predating the filing of the petition, documents,

28 exhibits, affidavits, and answers under oath to written

4

interrogatories propounded by the judge.   Habeas Rule 7(a), (b).

If, upon expansion of the record, the Court perceives that a defect not apparent on the face of the petition may preclude a hearing on the merits, then the Court may proceed to determine a motion to dismiss.   Hillery v. Pulley, 533 F.Supp. 1189, 1196 (E.D.Cal. 1982).   In Blackledge v. Allison, 431 U.S. 63, 80-81 (1977), the United States Supreme Court suggested that summary judgment standards should be used to test whether facially adequate allegations have a sufficient basis in fact to warrant plenary presentation of evidence.   The Court noted that expansion of the record in a given case could demonstrate that an evidentiary hearing is unnecessary, and the Court specifically advised that there might be cases in which expansion of the record would provide evidence against a petitioner's contentions so overwhelming as to justify a conclusion that an allegation of fact does not raise a substantial issue of fact.   Id. at 81.   In such circumstances, the petitioner is entitled to "careful consideration and plenary processing of (his claim,) including full opportunity for presentation of the relevant facts."   Id. at 82-83.

Summary judgment standards were likewise applied in Hillery v. Pulley, 533 F.Supp. 1189, 1197 (E.D.Cal. 1982), where the Court stated:

> The standards under Rule 56 are well known (footnote omitted).   To paraphrase them for purposes of habeas proceedings, it may be said that a motion to dismiss a petition for habeas corpus made after expansion of the record may only be granted when the matters on file reveal that there is no genuine issue of material fact "which if resolved in accordance with the petitioner's contentions would entitle him to relief... (citation omitted).   Only if it appears from

5

undisputed facts... that as a matter of law petitioner
is entitled to discharge, or that as a matter of law
he is not, may an evidentiary hearing be avoided."
(Citation omitted.)

533 F.Supp. 1197.

In the present case, the record was expanded in connection with the motion to dismiss to include facts concerning the disciplinary process and the consequences of the challenged disciplinary finding.   Pursuant to the foregoing standards, this expansion of the record may permit summary disposition of the petition without a full evidentiary hearing.

Accordingly, pursuant to Habeas Rule 4, the Court will review the facts alleged in the petition and as reflected in the evidentiary materials submitted by the parties in connection with the motion to dismiss.

III.   <u>The Petition</u>

In the petition, Petitioner's primary claim is that on August 14, 2007, at KVSP, prison officials violated Petitioner's right to due process of law in connection with a prison disciplinary hearing because 1) the evidence was insufficient to support an adjudication that Petitioner engaged in mutual combat with another inmate in violation of Cal. Code Regs. tit. 15, § 3005; 2) the hearing was untimely; 3) a pre-hearing interview of Petitioner regarding the events was not confidential, and thus Petitioner was unable to offer evidence; and 4) requested witnesses did not testify in Petitioner's behalf.  (Pet. 1-2, 5, 42-44; Mot. Ex. 2, 12.)  Petitioner also complains that because placement reviews by classification staff were not regularly implemented, Petitioner was exposed to an assault by another

inmate and suffered a denial of Petitioner's right to be protected reasonably from threats of violence from prisoners and guards.  (Pet. 7.)

The relief requested by Petitioner is reversal of the disciplinary finding of guilt of mutual combat, expungement of all references in his file, and protection against retaliation and malicious transfer.  (Pet. 15.)  In an earlier petition filed in state court, Petitioner asked for restoration of ninety (90) days of lost behavior credits.  (Pet. Ex. C, 26.)

IV.   <u>Factual Summary</u>

Petitioner is serving a sentence of twenty-four (24) years imposed by the Los Angeles County Superior Court for one (1) count of committing lewd acts with a child under the age of fourteen (14) in violation of Cal. Pen. Code § 288(a) and three (3) counts of committing lewd acts with a child by force or fear in violation of Cal. Pen. Code § 288(b)(1).  (Mot. Ex. 1.)

A.   <u>The Disciplinary Violation and Process</u>

The records filed in support of the motion to dismiss reflect that on July 12, 2007, Sergeant M. L. Sobbe reported that on July 3, 2007, at about 7:20 a.m., she was assigned as Facility "C" Correctional Sergeant.  (Mot. Ex. 2, doc. 12, 10.)  Floor Officer A. Agu of Facility "C", Building number 8, advised via institutional radio that there was a possible cell fight; Petitioner and his cell mate, Ramirez, were involved in mutual combat in the cell.  Sobbe reported that in a subsequent interview, Petitioner admitted to being involved in mutual combat with his cell mate, Ramirez, whom he considered to be an enemy. (<u>Id.</u>)

On July 16, 2007, Petitioner was given copies of the rules violation report of Sergeant Sobbe. (Mot. Ex. 2, doc. 12, 10.)

Correctional Officer T. Reyna acted as investigative employee for Petitioner. (Mot., Ex. 2, doc. 12, 11.) On August 6, 2007, Reyna interviewed Petitioner, who when asked, responded that he had no objections to Reyna's investigating the matter. (Id. 14.) Petitioner acknowledged receipt of the disciplinary report, a CDC 115, and a CDC 115A; he stated to the investigating employee that he understood the charge, did not want to make a statement, but wanted two inmates and two correctional staff members present at the hearing. (Id.)

Investigating employee Reyna reported on August 13, 2007, that Sergeant Sobbe informed him that after she had learned there was a cell fight, both inmates were brought up to "C-Program," where they both admitted to mutual combat. (Mot. Ex. 2, doc. 12, 15.) Reyna also contacted and interviewed the two inmate witnesses requested by Petitioner who stated that they did not see or hear anything. Likewise, neither of the staff members requested by Petitioner recalled the inmates or the incidents, and thus neither could give a statement. (Id.)

At a hearing held on August 14, 2007, the hearing's purpose and Petitioner's rights were explained to Petitioner, who appeared before Senior Hearing Officer (SHO) T. Harris, a Correctional Lieutenant, for adjudication of the disciplinary charge. Petitioner stated that he was in good health and ready to proceed. (Id.) He entered a plea of not guilty of mutual combat, a violation of Cal. Code Regs. § 3005(c). Petitioner stated that he did not consider Ramirez to be an enemy, could

8

"program" with him on the same yard or facility, and had already signed a compatibility "chrono." (Mot., Ex. 2, doc. 12, 12.) SHO Harris wrote:

> WITNESSES: Witnesses were originally requested by Inmate GARCIA, but were waived during the hearing as indicated by his signature on the 128 B (Waiver of Witnesses) chrono and dated, 08/14/07.

> EVIDENCE: GARCIA did request additional material/evidence to be presented at the hearing. A CDC-7219, (sic) The SHO notes that the CDC-7219 shows injuries to GARCIA's right hand, which is consistent with being in an altercation.

(Id. 11.)

The record does not contain a signed waiver of witnesses.

Harris found Petitioner guilty of the violation because the charge was substantiated by a preponderance of the evidence, including Sergeant Sobbe's report; Petitioner's admission; the CDC-7219 Medical Report of Injury of Unusual Occurrence for Inmate Garcia that described "injuries found, an abrasion/scratch and active bleeding to the right palm, an abrasion/scratch to the right knee, and an abrasion/scratch, and active bleeding to the inside of the left calf," which was consistent with being in a physical altercation; and the CDC-7219 Medical Report of Injury or Unusual Occurrence for Inmate Ramirez, which described unspecified injuries that SHO Harris believed had been sustained in, and demonstrated, a physical altercation involving both inmates. (Id.)

With respect to the procedures undertaken in the disciplinary proceedings, SHO Harris reported that Petitioner acknowledged receipt more than twenty-four (24) hours before the hearing of several reports: CDC-115, CDC-115 A, IE Report by

9

1  Officer T. Reyna, CDC-1288 Enemy Concerns chrono, and two (2)

2  CDC-7219's.  Harris noted that the pre-hearing copy of the

3  disciplinary charge (CDC-115) had been issued to Petitioner on

4  July 16, which was within fifteen (15) days of the date of

5  discovery of the alleged misconduct.  Further, the hearing was

6  held within thirty (30) days of issuance of the pre-hearing copy.

7  All time constraints had been met, and due process would not be

8  offended by a forfeiture of credit.  (Mot. Ex. 2, doc. 12, 10.)

9  The report of hearing reflects that a copy of the CDC 115 was

10 given to Petitioner after the hearing.  (Id.)  Petitioner was

11 advised of his right to appeal the action and the procedure for

12 restoration of credits.  (Id. 12.)

13         B.   The Consequences of the Disciplinary Process

14      Petitioner alleged that he lost ninety (90) days of credit

15 and was placed in disciplinary segregation.  (Pet. 1.)  In an

16 earlier petition filed in state court, Petitioner alleged that he

17 lost "good conduct for 1 1/2 years, 6 points."  (Pet. 38.)

18      However, in support of the motion to dismiss, Respondent

19 submitted documentation reflecting that although Petitioner was

20 initially assessed a loss of ninety (90) days of credit in August

21 2007 (Mot. Ex. 2, 12), prison officials restored the ninety (90)

22 days in February 2008 pursuant to Cal. Code. Regs. tit. 15,

23 §§ 3327 and 3328 (2008) (Mot. Ex. 3).  There is no indication in

24 the materials submitted by the parties that Petitioner appealed

25 or otherwise sought to set aside the restoration of credit.

26      In his opposition, Petitioner does not dispute that the

27 ninety (90) days were restored.  However, Petitioner argues that

28 the finding nevertheless affected his classification score.

1    Record support for Petitioner's assertion is found in a

2  memorandum dated November 7, 2008, from SCC's Chief Deputy Warden

3  S. J. Mendoza Salinas to Petitioner, which reflects that

4  Petitioner appealed a committee's classification score adjustment

5  of July 30, 2008.  Because of the mutual combat finding of 2007,

6  the committee had failed to award Petitioner two additional

7  points for favorable, disciplinary-free behavior during the six-

8  month period beginning May 4, 2007, and ending November 3, 2007.

9  (Opp., Doc. 19, Ex. C, 22.)  The warden concluded that although

10  Petitioner's time credit was restored, the guilty finding alone

11  rendered Petitioner ineligible for favorable behavior points

12  pursuant to Cal. Code Regs. tit. 15, § 3375.4(a)(2).

13    Petitioner asserts that his "good-conduct scores of 6 points

14  was raised from 49 points to 55," and he was transferred to SCC,

15  his present site of confinement.  (Opp. 6.)  He also asserts that

16  the "loss of 8 points 'Good time Credits' were never returned

17  directly" and resulted in an attempt of the SCC classification

18  committee to send Petitioner back to a maximum level IV state

19  prison.  (Id.)

20    In addition to the allegedly wrongful classification score,

21  Petitioner complains that his glasses were wrongfully removed

22  from his cell by a correctional officer, and Petitioner was

23  placed in disciplinary segregation (the "hole") for ninety (90)

24  days without daily showers or access to the law library, a public

25  telephone to call his relatives, or "Personal Quarterly Packes."

26  (Opp., Doc. 19, 1-2.)  Petitioner asserts that his punishment was

27  in retaliation for various administrative appeals filed at Kern

28  Valley State Prison.  (Id. at 2.)  Petitioner argues that this

penalty was a violation of due process of law, and it prevented

him for ninety (90) days from being provided with work time,

credit-qualifying assignments, or other program opportunities for

earning time credits.  (Id. at 3.)

     V.   Legal Standards

     Because the petition was filed after April 24, 1996, the

effective date of the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh

v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008

(1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

     A district court may entertain a petition for a writ of

habeas corpus by a person in custody pursuant to the judgment of

a state court on the ground that the custody is in violation of

the Constitution, laws, or treaties of the United States.  28

U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

375 n. 7 (2000).  Further, a district court has subject matter

jurisdiction to entertain a petition for a writ of habeas corpus

only if the petitioner is "in custody" within the meaning of the

habeas corpus statute at the time the petition is filed.  28

U.S.C. §§ 2241(c)(3), 2254(a).  "Custody" is not limited to

actual physical incarceration; a petitioner is in "custody" if he

is subject to restraints not shared by the public generally.

Jones v. Cunningham, 371 U.S. 236, 243 (1963).  A petitioner must

be in custody with respect to the conviction he attacks; once a

sentence is fully served, even if the conviction may affect the

length or conditions of a sentence to be imposed in the future,

the prisoner is not "in custody" within the meaning of 28 U.S.C.

§§ 2241(c) or 2254(a).  See Maleng v. Cook, 490 U.S. 488, 490-492

(1989).

Claims challenging the validity of a prisoner's continued incarceration, including the fact or length of the custody, are within the "heart of habeas corpus" and are cognizable only in federal habeas corpus. Preiser v.Rodriguez, 411 U.S. 475, 498-99, 499 n. 14 (1973). In contrast, an action pursuant to 42 U.S.C. § 1983 is appropriate for a state prisoner challenging the conditions of prison life but not the fact or length of the custody. Preiser v. Rodriguez, 411 U.S. at 499; Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

Habeas corpus has been mentioned as a potential, alternative remedy to an action under § 1983 for unspecified additional and unconstitutional restraints during lawful custody. Preiser v. Rodriguez, 411 U.S. at 499-500. The cases cited by the Court in Preiser in support of the proposition that habeas jurisdiction covers challenges to prison conditions are factually distinct and have involved state interference with prison conditions that in turn has burdened or precluded prisoners' ability to pursue the federal habeas corpus remedy. Johnson v. Avery, 393 U.S. 483 (1969) (a motion for law books and a typewriter was treated as a petition for habeas relief, and, in the absence of an alternative form of assistance to prisoners, the Court held invalid a state prison regulation that barred inmates from assisting other prisoners in preparing petitions for post-conviction relief); Ex Parte Hull, 312 U.S. 546, 549 (1941) (a prison's regulation of the contents of a petition for habeas relief was held invalid because it was inconsistent with the federal courts' exclusive authority to determine the sufficiency of a petition). Another

case noted in <u>Preiser</u> was <u>Wilwording v. Swenson</u>, 404 U.S. 249, 251 (1973), where the Court treated what purported to be a habeas petition concerning conditions of confinement, including disciplinary measures, as a civil rights complaint and failed to require exhaustion beyond having exhausted state habeas remedies.

The Court notes that the appropriate extent of any overlap between habeas corpus and § 1983 has not been clarified by subsequent decisions of the United States Supreme Court.

In this circuit it has been held that the availability of habeas relief with respect to challenges to conditions of confinement depends on the likelihood of the effect of a successful challenge on the overall length of the prisoner's sentence. <u>Ramirez v. Galaza</u>, 334 F.3d 850, 858-59 (9th Cir. 2003). In <u>Ramirez v. Galaza</u>, the court considered whether the favorable termination rule of <u>Heck v. Humphrey</u> and <u>Edwards v. Balisok</u>[1] should apply to a state prisoner's § 1983 claim that prison disciplinary hearing procedures that resulted in the prisoner's placement in administrative segregation violated his constitutional rights. 334 F.3d at 852. The court determined that the prisoner could proceed under § 1983 without proving favorable termination because the prisoner's claim, if

---

[1] The first reference is to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), in which it was held that in order for a prisoner to maintain a § 1983 claim for damages (but not injunctive relief or release from custody) for an allegedly unconstitutional conviction or sentence or for an action that would render a conviction or sentence invalid, a prisoner must prove that the conviction or sentence has been reversed or invalidated by a state tribunal or has warranted issuance of a federal writ of habeas corpus. The second reference is to <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997), in which the <u>Heck</u> "favorable termination" rule was extended to a prisoner's claim for damages and injunctive relief for prison disciplinary hearing procedures that resulted in a loss of good-time credits because the alleged defects, if established, necessarily implied the invalidity of the deprivation of the credits.

successful, would not necessarily invalidate a disciplinary

action that affected the fact or length of his confinement.  Id.

The court reviewed the significance of Preiser v. Rodriquez:

> The Supreme Court first addressed the intersection
> between § 1983 and writs of habeas corpus in Preiser v.
> Rodriquez, holding that "when a state prisoner is
> challenging the very fact or duration of his physical
> confinement," and where "the relief he seeks is a
> determination that he is entitled to immediate release
> or a speedier release from that imprisonment," the
> prisoner's "sole federal remedy is a writ of habeas
> corpus." 411 U.S. at 500, 93 S.Ct. 1827. Conversely,
> Preiser concluded that "a § 1983 action is a proper
> remedy for a state prisoner who is making a
> constitutional challenge to the conditions of his
> prison life, but not to the fact or length of his
> custody." Id. at 499, 93 S.Ct. 1827.

Ramirez v. Galaza, 334 F.3d 855.  The court later noted that the

distinction applied whether the term of incarceration resulted

from a conviction or sentence imposed by a state court, or a

disciplinary sanction imposed in a state prison.  Id. at 856.

The court reviewed its prior decisions concerning the

availability of habeas corpus to challenge the conditions of

confinement:

> Our holding also clarifies our prior decisions
> addressing the availability of habeas corpus to
> challenge the conditions of imprisonment. We have held
> that a prisoner may seek a writ of habeas corpus under
> 28 U.S.C. § 2241 for "expungement of a disciplinary
> finding from his record if expungement is likely to
> accelerate the prisoner's eligibility for parole."
> Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989)
> (citing McCollum v. Miller, 695 F.2d 1044, 1047 (7th
> Cir.1982)). Bostic does not hold that habeas corpus
> jurisdiction is always available to seek the
> expungement of a prison disciplinary record. Instead, a
> writ of habeas corpus is proper only where expungement
> is "likely to accelerate the prisoner's eligibility for
> parole." Bostic, 884 F.2d at 1269 (emphasis added). In
> Bostic, we cited the Seventh Circuit's decision in
> McCollum which presumed that where a disciplinary
> infraction might delay a prisoner's release on parole,
> the prisoner may, "by analogy to Preiser," challenge
> the disciplinary sentence through habeas corpus.

15

> McCollum, 695 F.2d at 1047. Bostic thus holds that the
> likelihood of the effect on the overall length of the
> prisoner's sentence from a successful § 1983 action
> determines the availability of habeas corpus.
> Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.1997)
> (finding "no difficulty in concluding that a challenge
> to the procedures used in the denial of parole
> necessarily implicates the validity of the denial of
> parole and, therefore, the prisoner's continuing
> confinement") (emphasis added).

Ramirez v. Galaza, 334 F.3d 858.

VI.   Claims Concerning Conditions of Confinement

Petitioner complains that his glasses were removed from his cell; tardy classification reviews subjected him to higher security risks during confinement, constituted a failure to protect him from other prisoners, and culminated in the assault that was the subject of the disciplinary proceeding; and during his time in the secured housing unit, he suffered a reduction in privileges, such as access to a telephone and the library.  He also alleges that his conditions of confinement resulted from retaliatory animus on the part of unspecified actors because Petitioner had filed previous administrative appeals.

These claims address not the duration of Petitioner's confinement, but rather the conditions of his every day, prison life.  Because these allegations concern only the conditions of his confinement, Petitioner is not entitled to habeas corpus relief, and the petition must be dismissed insofar as Petitioner seeks to pursue claims relating to the conditions of confinement.

Should Petitioner wish to pursue his claims, he must do so by way of a civil rights complaint pursuant to 42 U.S.C. § 1983. The Clerk will be directed to send an appropriate form complaint to Petitioner.

VII. <u>Claim concerning the Disciplinary Process and Findings</u>

Petitioner alleges that the disciplinary findings resulted in conditions of confinement that bore some relationship to the likelihood of, or some possibility of accelerating indirectly the time of, his release. Petitioner alleges that while in disciplinary segregation, he lost the opportunity to participate in programs that in turn could have given him time credits that ultimately might have accelerated his release date. Further, he lost classification points, which affected the security level of his custody.

It is undisputed that the findings affected Petitioner's classification score. The Court will consider in the context of Petitioner's overall sentence the nature and sufficiency of any nexus between the disciplinary finding and the length of Petitioner's imprisonment, and the Court will assess the likelihood that expungement of the finding would accelerate Petitioner's release.

First, it has not been shown that expungement of the challenged disciplinary findings would be likely to accelerate Petitioner's eligibility for parole. Petitioner is serving a determinate sentence of four consecutive full terms of six years each, for a total term of twenty-four years. (Mot. Ex. 1.) As a prisoner sentenced to a determinate term pursuant to Cal. Pen. Code § 1170, Petitioner is required to serve a statutorily fixed period of parole unless waived. Cal. Pen. Code § 3000(a)(1), (b). It does not appear that Petitioner's circumstances are analogous to prisoners serving indeterminate sentences. <u>See,</u>

1  Cal. Pen. Code § 3041.[2]

2      In this circuit, it is established that although habeas and

3  § 1983 claims are not necessarily mutually exclusive, there are

4  habeas claims that fall within the set of "core" challenges to

5  the fact or duration of confinement identified in Preiser, and

6  then there are claims which do not directly challenge the fact or

7  duration of confinement but have a sufficient nexus to the length

8  of imprisonment so as to "implicate, but not fall squarely

9  within" the core of challenges noted in Preiser.  Docken v.

10 Chase, 393 F.3d 1024, 1031 (9th Cir. 2004).  In Docken,

11 prisoners' claims solely for equitable relief concerning the

12 constitutional propriety of less frequent parole reviews were

13

14 ─────────────────

15     [2] It thus appears that Petitioner's case may be distinguished from those
   where the record reflects the effect of disciplinary findings on parole or
   eligibility or suitability for parole.  See, Murphy v. Department of
16 Corrections and Rehabilitation et al., No. C 06-04956 MHP, 2008 WL 111226, *5-
   *7 (N.D.Cal. 2008) (considering on habeas the claim of a prisoner serving an
17 indeterminate term who sought only equitable relief with respect to
   disciplinary findings that could potentially affect the duration of his
   confinement because if successful, it was likely to accelerate eligibility for
18 parole); Camp v. Prosper, No. CIV S-06-1662 DAD P, 2009 WL 1099914 (E.D.Cal.
   2009) (time credit loss affected the parole eligibility of a prisoner serving
19 an indeterminate sentence and thus was cognizable on habeas); Drake v. Felker,
   No. 2:07-cv-00577, 2007 WL 4404432, *2-*3 (E.D.Cal. 2007) (state prisoner's
20 claim seeking expungement of a disciplinary finding was cognizable on habeas
   because the court concluded that in California, negative disciplinary findings
   necessarily affected potential eligibility for parole, and citing Cal. Code
21 Regs. tit. 15, § 2402 [relating to parole for murderers with indeterminate
   life sentences]; Marvin v. Department of Corrections and Rehabilitation et
22 al., No. V 06-4958 MHP, 2007 WL 1031124 (N.D.Cal. 2007) (a claim concerning
   state disciplinary findings was cognizable where the record showed that the
23 findings had affected the petitioner's chance of release on parole); Dutra v.
   Department of Corrections and Rehabilitation, No. C 06-0323 MHP, 2007 WL
24 3306638, *5-*7 (even though no evidence demonstrated that the state parole
   board had considered a challenged disciplinary finding in denying Petitioner's
25 parole, under the test set forth in Docken v. Chase, 393 F.3d 1024, 1031 (9th
   Cir. 2004), the disciplinary was likely to accelerate eligibility for parole
26 [also citing Cal. Code Regs. tit. 15, § 2402(b), which requires consideration
   of reliably documented criminal misconduct in connection with indeterminate
27 sentences] or could potentially affect the duration of confinement); see also,
   Seehausen v. Hood, no. Civ. 02-378-ST, 2002 WL 31006009 (D. Ore., July 24,
   2002) (federal prisoner's access to furloughs was dependent upon his
28 classification score, and thus a claim concerning a disciplinary procedure was
   cognizable on habeas corpus).

held to be cognizable pursuant to § 2254 because if successful, the claims "could potentially affect the duration of their confinement." 393 F.3d 1031. It was enough that an effect on the duration of confinement was possible, but not certain, if the challenge were successful. 393 F.3d 1031. The court reviewed various decisions, including Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), which had held that a claim to expunge a disciplinary finding was cognizable on habeas corpus pursuant to 28 U.S.C. § 2241 if expungement was likely to accelerate the prisoner's eligibility for parole. The court in Docken explained:

> Instead, we understand *Bostic's* use of the term "likely" to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the "core" challenges identified by the *Preiser* Court. Such a reading follows from *Bostic* itself, which spoke of claims that are "likely to accelerate the prisoner's *eligibility* for parole," 884 F.2d at 1269 (emphasis added), rather than those likely to accelerate the prisoner's release. Docken's central contention--that he is entitled to annual review-is even more related to the duration of his confinement than eligibility for parole in the abstract, and therefore appears at least as viable as the subject of a habeas petition as that which was before the court in *Bostic* and *Butterfield.*
>
> Ultimately, though Docken's claim may not be the kind of "core" challenge the *Preiser* Court had in mind, the potential relationship between his claim and the duration of his confinement is undeniable. In such a case, we are reluctant to unnecessarily constrain our jurisdiction to entertain habeas petitions absent clear indicia of congressional intent to do so. *See, e.g., INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Flores-Miramontes v. INS*, 212 F.3d 1133 (9th Cir. 2000).

In contrast, the instant case does not involve parole or eligibility for parole. Further, because the time credit

forfeited by Petitioner has been restored, Petitioner's claim concerning the invalidity of the disciplinary procedures does not directly or necessarily affect the fact or duration of his custody.  Petitioner's claim is analogous to that in <u>Ramirez v. Galaza</u> because once the forfeited credit was restored, Petitioner's claim no longer necessarily affected the duration of his confinement or bore the same relationship to his release.

Petitioner complains that along with an effect on his classification score, he suffered transfer or attempted transfer to different custodial institutions as well as confinement in disciplinary segregation.

Review of Cal. Code Regs. tit. 15, § 3375 reveals that the classification process may result in adverse effects, including transfer to an institution with a higher security level, removal from an assigned program, transfer to a more restrictive or higher security program, an increase in the inmate's custody designation, placement in segregated housing, and placement in a reduced work group.  Cal. Code Regs. tit. 15, § 3375(f)(1).  The process of classification and reclassification includes consideration of favorable and unfavorable behavior since the last classification review, with points assigned for participation in work assignments and for six-month periods of custody without serious disciplinary violations.  Cal. Code Regs. tit. 15, § 3375.4(a), (b).

Petitioner's position is essentially that because the disciplinary finding affected his classification score, it affected his conditions of confinement and his opportunity to earn further time credits.  It does not appear that the

classification scores themselves are likely to affect the fact or duration of Petitioner's confinement.  Petitioner has not identified any potential relationship between his claim concerning the propriety of the disciplinary finding on the one hand, and on the other the fact, legality, or duration of his confinement.  Thus, Petitioner's claim might be brought in the first instance in a suit pursuant to § 1983.  Cf., Wolff v. McDonnell, 418 U.S. 539, 554-55 (1974).

The Court concludes that in the present case, the nexus between the claim and the length of imprisonment is insufficient to confer habeas jurisdiction on this Court.

The Court is mindful that the decisions concerning the boundaries of the habeas corpus remedy have occurred in the context of efforts to limit jurisdiction under § 1983, which does not always require exhaustion of state processes.  As has been noted, the concern of the United States Supreme Court has been how far the "general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around."  Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004).  Further, § 1983 and habeas are not necessarily mutually exclusive.  Docken, 393 F.3d 1031.

The Court does not want to curtail its jurisdiction unnecessarily.  However, in the present case there is an absence of any special circumstances requiring the availability of the habeas remedy in order to preserve Petitioner's access to habeas relief.  Further, there is no basis for connecting release on, or eligibility for, parole with the findings concerning Petitioner's disciplinary misconduct.  There is an insufficient likelihood of

1   any other effect on the fact or duration of confinement to bring

2   the present petition within the scope of habeas corpus.

3       Accordingly, the Court will recommend that Respondent's

4   motion to dismiss be granted.

5       VIII. <u>Alternative Consideration of Due Process Claim</u>

6       Because of the uncertainty of the law concerning subject

7   matter jurisdiction, and in order to facilitate a complete

8   disposition of Petitioner's case without further delay, the Court

9   will set forth its analysis concerning Petitioner's due process

10  claim in the event it were assumed or found that the Court has

11  subject matter jurisdiction pursuant to § 2254 over Petitioner's

12  claim.

13      A. <u>Legal Standards</u>

14      Procedural due process of law requires that where the state

15  has made good time subject to forfeiture only for serious

16  misbehavior, then prisoners subject to a loss of good-time

17  credits must be given advance written notice of the claimed

18  violation, a right to call witnesses and present documentary

19  evidence where it would not be unduly hazardous to institutional

20  safety or correctional goals, and a written statement of the

21  finder of fact as to the evidence relied upon and the reasons for

22  disciplinary action taken. <u>Wolff v. McDonnell</u>, 418 U.S. 539,

23  563-64 (1974). Confrontation, cross-examination, and counsel are

24  not required. <u>Wolff</u>, 418 U.S. at 568-70.

25      Further, where good-time credits are a protected liberty

26  interest, the decision to revoke credits must be supported by

27  some evidence in the record. <u>Superintendent v. Hill</u>, 472 U.S.

28  445, 454 (1985). The Court in <u>Hill</u> stated:

1      We hold that the requirements of due process are
2  satisfied if some evidence supports the decision by the
   prison disciplinary board to revoke good time credits.
3  This standard is met if "there was some evidence from
   which the conclusion of the administrative tribunal
4  could be deduced...." United States ex rel. Vajtauer v.
   Commissioner of Immigration, 273 U.S., at 106, 47
5  S.Ct., at 304. Ascertaining whether this standard is
   satisfied does not require examination of the entire
6  record, independent assessment of the credibility of
   witnesses, or weighing of the evidence. Instead, the
7  relevant question is whether there is any evidence in
   the record that could support the conclusion reached by
8  the disciplinary board. See ibid.; United States ex
   rel. Tisi v. Tod, 264 U.S. 131, 133-134, 44 S.Ct. 260,
9  260-261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506
   F.2d 1011, 1018 (CA8 1974).

10  Superintendent v. Hill, 472 U.S. at 455-56.  The Constitution

11  does not require that the evidence logically preclude any

12  conclusion other than the conclusion reached by the disciplinary

13  board; rather, there need only be some evidence in order to

14  ensure that there was some basis in fact for the decision.

15  Superintendent v. Hill, 472 U.S. at 457.

16      B. Analysis

17      Here, Petitioner received the required advance written

18  notice of the claimed violation.

19      Petitioner complains that he was not interviewed in private

20  by correctional staff; thus, he was precluded from making a

21  statement to the investigating officer and from presenting

22  evidence in the proceeding.  Petitioner, who claims that cell

23  mate Ramirez was not an enemy and professes to be willing to

24  "program" with Ramirez, has not set forth any facts or

25  circumstances that would have entitled him to a completely

26  private interview.  Further, Petitioner has not alleged facts

27  that demonstrate that his failure to offer any additional

28  evidence of any sort at the hearing resulted from the nature or

circumstances of any interview of Petitioner.  In this respect, Petitioner has not demonstrated any denial of the procedures required by due process as set forth in Wolff and Hill.

Petitioner challenges the failure to have his witnesses testify at the hearing.  However, accepting Petitioner's version of events, including his assertion that he did not waive his witnesses, the documentation shows that none of the witnesses requested by Petitioner recalled the pertinent events or was able to make statements concerning the incident.  Petitioner has not shown that any of the witnesses would have presented any helpful or exculpatory evidence.  Therefore, Petitioner has not alleged or shown any prejudicial denial of due process.  Schenck v. Edwards, 921 F.Supp. 679, 687-88 (E.D.Wash. 1996).  Petitioner received the required written statement of the finder of fact as to the evidence relied upon and the reasons for disciplinary action taken.

In summary, the Court concludes that undisputed evidence in the record reflects that Petitioner received the procedural protections required by the Due Process Clause.

With respect to the presence of some evidence to support the disciplinary finding, in determining whether some evidence of the violation supported the finding, the Court does not make its own assessment of the credibility of witnesses or reweigh the evidence; however, the Court must ascertain that the evidence has some indicia of reliability and, even if meager, is "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987) (quoting Superintendent v.

1  Hill, 472 U.S. 445, 457 (1985)).

2      The record reflects that in arriving at his conclusions, the
3  SHO relied on Sergeant Sobbe's report, Petitioner's admission,
4  and the two CDC-7219 medical report forms reflecting injuries to
5  both inmates.  Evidence consisting of staff reports, a
6  petitioner's admissions, and corroborating evidence has been held
7  sufficient to constitute "some evidence" as required by Hill.
8  Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (holding
9  sufficient the statement of a guard that the inmate had admitted
10 a theft to supplement his income, coupled with corroborating
11 evidence); Crane v. Evans, 2009 WL 148273, *3  (N.D.Cal. Feb. 2,
12 2009) (holding sufficient an inmate's admission and
13 corroborating, circumstantial evidence).

14     In summary, the Court has considered the documents in the
15 expanded record, has indulged all reasonable factual inferences
16 in Petitioner's favor, and has accepted his version of disputed,
17 specific facts.  Viewing the evidence in this posture, it is
18 clear that the Respondent has established as a matter of law that
19 Petitioner's allegations do not entitle him to habeas relief.
20 The expanded record reflects that Petitioner received due process
21 of law with respect to the procedures afforded him in connection
22 with the prison disciplinary charge and finding of mutual combat.
23 Further, the finding was supported by the requisite "some
24 evidence."

25     The expanded record reflects that even accepting as true
26 Petitioner's version of the facts, Petitioner has not alleged a
27 basis for habeas relief, and Respondent is entitled to prevail as
28 a matter of law.  Hillery v. Pulley, 533 F.Supp. 1189, 1197 n. 15

1  (citing <u>Jones v. Halekulani Hotel Inc.</u>, 557 F.2d 1308, 1310 (9th

2  Cir. 1977) and <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157-59

3  (1970)).

4      Accordingly, the Court will recommend that Respondent's

5  motion to dismiss the petition be granted.

6      IX.   <u>Certificate of Appealability</u>

7      Unless a circuit justice or judge issues a certificate of

8  appealability, an appeal may not be taken to the court of appeals

9  from the final order in a habeas proceeding in which the

10  detention complained of arises out of process issued by a state

11  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

12  U.S. 322, 336 (2003).  A certificate of appealability may issue

13  only if the applicant makes a substantial showing of the denial

14  of a constitutional right.  § 2253(c)(2).  Under this standard, a

15  petitioner must show that reasonable jurists could debate whether

16  the petition should have been resolved in a different manner or

17  that the issues presented were adequate to deserve encouragement

18  to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

19  (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

20  certificate should issue if the Petitioner shows that jurists of

21  reason would find it debatable whether the petition states a

22  valid claim of the denial of a constitutional right and that

23  jurists of reason would find it debatable whether the district

24  court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

25  529 U.S. 473, 483-84 (2000). In determining this issue, a court

26  conducts an overview of the claims in the habeas petition,

27  generally assesses their merits, and determines whether the

28  resolution was debatable among jurists of reason or wrong.  <u>Id.</u>

It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed. Id. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

X. Recommendation

In accordance with the foregoing analysis, it is RECOMMENDED that:

1) Respondent's motion to dismiss the petition be GRANTED; and

2) The Court DECLINE to issue a certificate of appealability; and

3) The Clerk be DIRECTED to forward to Petitioner a blank form complaint for civil rights claims brought pursuant to 42 U.S.C. § 1983; and

4) The Clerk be DIRECTED to close the action.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court,

27

Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 16, 2010**          /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE